UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
J.P. MORGAN SECURITIES INC.,                          :

                            Plaintiff,         : 08-Civil Action No. 5423

            against-                              :

HERNAN E. ARBIZU,                                            :

                   Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

         Plaintiff J.P. Morgan Securities Inc. ("JP Morgan") respectfully submits this Memorandum of Law in support of its motion for a temporary restraining order and a preliminary injunction to restrain and enjoin defendant Hernan E. Arbizu ("Arbizu" or "Defendant") from further breaching his contracts with JP Morgan and further violating his common law duties, until such time as an arbitration panel appointed by NASD Dispute Resolution, Inc. ("NASD") can decide the merits of this dispute.

**Preliminary Statement**

         As is more fully set forth below and in the papers submitted herewith, JP Morgan seeks an order preserving the status quo in aid of arbitration before the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution that JP Morgan is in the process of commencing against Defendant. Specifically, JP Morgan seeks to enjoin Defendant from violating his obligations to JP Morgan by, among other things, using or disclosing JP Morgan's trade secrets and confidential

business information, including proprietary customer information, in addition to proscribing him from exploiting the records, client information, documents, materials, assets and/or information he stole to solicit JP Morgan clients for his benefit or to divert their accounts to a JP Morgan competitor, until such time as an arbitration panel appointed by FINRA can address JP Morgan's claims for permanent injunctive relief against Defendant.

JP Morgan's requested relief is narrow – it does not seek to prevent Defendant from working in the financial services industry or even from competing directly with JP Morgan in the exact geographic area where he formerly was employed. Rather, JP Morgan seeks only to prevent Defendant from breaching his express written agreements with -- and clear statutory and common law obligations to -- JP Morgan and from rehearsing or profiting from his criminal conduct. Such violations, absent injunctive relief, would irreparably damage JP Morgan.

JP Morgan will suffer irreparable harm if this Court does not grant the limited relief sought. Without the requested injunctive relief, any arbitration award FINRA issues will be ineffectual or moot because Defendant will have succeeded in disclosing and compromising JP Morgan' trade secrets and confidential and proprietary information by then; will have decimated JP Morgan customers' confidence, trust, and faith; and will have irreparably harmed JP Morgan's goodwill, reputation, and business.

Moreover, JP Morgan can demonstrate an overwhelming likelihood that it will succeed on the merits, that the balance of hardships tips in its favor,

and finally, that the public interest will be harmed absent an injunction. JP Morgan seeks only to compel Defendant to honor his legal obligations and contractual obligations to the company.

Until JP Morgan terminated Defendant, a registered representative, he managed in excess of $200 million in accounts maintained by JP Morgan's customers.

In violation of his contractual and common law duties and criminal law, Defendant has stolen and absconded with proprietary and confidential information he improperly removed from JP Morgan.

Accordingly, JP Morgan is entitled to injunctive relief pending a final confirmed award in the FINRA arbitration proceeding between the parties.

### Statement Of Facts

JP Morgan hired Arbizu in November of 2006. For the last year and a half, Arbizu served as Vice-President and Senior Private Banker for the Argentina region in JP Morgan's Private Banking Division in Manhattan, New York. Prior to his termination, JP Morgan vested Arbizu with the responsibility for managing in excess of $200 million in assets for JP Morgan clients, for which JP Morgan paid him $300,000. In his position at JP Morgan, Defendant was responsible for developing and maintaining relationships with high net worth individuals and their related businesses, corporations, institutions, trusts and other entities in Argentina and Chile. As such, Defendant served as the principal contact between these clients and JP Morgan. In performing his job, JP Morgan provided Defendant with

access, on a daily basis, to very sensitive information concerning JP Morgan's clients.

Beginning in May of 2008, JP Morgan discovered evidence that Defendant had effected unauthorized wire transfers between the account of a JP Morgan client and accounts at other firms, in addition (i) to purloining JP Morgan documents, materials, assets and/or information belonging to JP Morgan and to the clients Defendant served; and (ii) to stealing confidential and proprietary information and assets belonging to JP Morgan and JP Morgan clients.  JP Morgan terminated him immediately thereafter.  In the meantime, Defendant has fled to Argentina.

Defendant, as such, has breached the express terms of multiple contracts, including JP Morgan's 2005 Long-Term Incentive Plan ("The Incentive Plan") and JP Morgan's Code of Conduct ("the Code of Conduct"), containing restrictive covenants and confidentiality agreements.  See Palacio Affidavit, ¶ 8-16, Exhibit B & C.  In addition to violating the Incentive Plan and Code of Conduct; Defendant has contravened New York law, both civil and criminal statutory codes and common-law. Defendant's violations consist of, but are not limited to, breach of contract, the misappropriation of trade secrets and confidential information, breach of fiduciary duty and the duty of loyalty, and intentional and negligent interference with actual and prospective economic advantage, the misappropriation of trade secrets and confidential information, and conversion.

The financial damage caused to JP Morgan by Defendant's wrongdoing is now incalculable.    Accordingly, to prevent irreparable harm arising from this course of wrongdoing, JP Morgan seeks immediate injunctive relief as follows: (i) barring Defendant from directly or indirectly using, disclosing, or transmitting for any purpose all JP Morgan documents, materials, assets, and/or information belonging to JP Morgan and/or JP Morgan clients that Defendant purloined, misappropriated, and/or with which he absconded; (ii) compelling Defendant to disgorge and to surrender all documents, materials, assets and/or information in whatever form (whether original, copied, computerized, electronic or handwritten) belonging to JP Morgan and JP Morgan's clients that Defendant purloined, stole, misappropriated, and/or with which he absconded; (iii) enjoining him from destroying or converting any of these records, client information, documents, materials, assets and/or information in whatever form (whether original, copied, computerized, electronic or handwritten) belonging to JP Morgan and JP Morgan clients; (iv) compelling Defendant to return to JP Morgan all documents, materials, assets and/or information in whatever form (whether original, copied, computerized, electronic or handwritten) belonging to JP Morgan and JP Morgan clients; (v) ordering Defendant to purge any computerized materials and documents and information derived therefrom in his possession, custody or control after Defendant first prints and returns it to JP Morgan; and (vi) proscribing him from exploiting the records, client information, documents, materials, assets

and/or information he stole to solicit JP Morgan clients for his benefit or to divert their accounts to a JP Morgan competitor.

## ARGUMENT

### I.     JP MORGAN IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Simultaneous with the relief here requested, JP Morgan will commence an arbitration proceeding against Defendant seeking permanent injunctive relief.[1] JP Morgan has no adequate remedy at law because absent an immediate grant of injunctive relief, Defendant will disrupt irreparably the status quo before FINRA can resolve this dispute and compensate JP Morgan adequately. Under Rule 13804 of the NASD Code of Arbitration Procedure for Industry Disputes, JP Morgan has the express right to seek temporary injunctive relief from this Court.[2] Unless this Court grants JP Morgan injunctive relief, Defendant will be free to exploit and to vitiate JP Morgan's confidential trade secrets until FINRA holds an arbitration hearing.

----

[1] FINRA was created in July 2007 through the consolidation of the National Association of Securities Dealers, Inc. (the "NASD") and the member regulation, enforcement and arbitration functions of the New York Stock Exchange.

[2] The arbitrability of Prudential's claims does not impair this Court's jurisdiction or ability to grant the relief requested. The NASD Code of Arbitration Procedure, pursuant to which the merits of this matter will ultimately be decided, provides that "[i]n industry or clearing disputes required to be submitted to arbitration pursuant to Rule 10201 [which includes employment disputes like the matter before the Court, parties may seek a temporary injunctive order, as defined in paragraph (a)(2) of this Rule, from a court of competent jurisdiction. . . . (2) For purposes of this Rule, temporary injunctive order means a temporary restraining order, preliminary injunction or other form of initial, temporary injunctive relief." NASD Code Arb. Proc. Rule 10335(a)

It is well settled that "[t]he fact that a dispute is to be arbitrated . . . does not absolve the court of its obligation to consider the merits of a requested preliminary injunction." Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125 (2d Cir. 1984) (citing Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1067 (2d Cir. 1972)); accord Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1052 (2d Cir. 1990). See also Drexel Burnham Lambert Inc. v. Ruebsamen, 139 A.D.2d 323, 328, 531 N.Y.S.2d 547 (1st Dep't 1988) (emphasis added), leave to appeal denied, 73 N.Y.2d 703, 537 N.Y.S.2d 490 (1988); Erickson v. Kidder Peabody & Co., Inc., 166 Misc. 2d 1, 5, 630 N.Y.S.2d 861, 863 (Sup. Ct. N.Y. County 1995); SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 82 (2d Cir. 2000).

Injunctive relief can be granted to prevent the arbitration from becoming a "hollow formality". Blumenthal, 910 F.2d at 1053. See also American Exp. Fin. Advisors Inc. v. Thorley, 147 F.3d 229, 231 (2d Cir. 1998) (arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits). The Court "must ensure that the parties get what they bargained for -- a meaningful arbitration of the dispute." Blumenthal, 910 F.2d at 1053.

In order to show entitlement to injunctive relief, JP Morgan must demonstrate: (1) a likelihood of success on the merits; (2) the potential for irreparable injury in the absence of an injunction; and (3) that the equities are balanced in its favor. W.T. Grant Co. v. Srogi, 52 N.Y.2d 496, 517, 438 N.Y.S.2d

761, 771 (1981); Chernoff Diamond & Co. v. Fitzmaurice, Inc., 234 A.D.2d 200, 201, 651 N.Y.S.2d 504, 505 (1st Dep't 1996); Coinmach v. Corp. v. Alley Pond Owners Corp., 25 A.D.3d 642, 808 N.Y.S.2d 418, 419 (2d Dep't 2006).    As established below, JP Morgan meets these requirements and, consequently, is entitled to injunctive relief preventing Defendant from misappropriating, exploiting, and vitiating JP Morgan's proprietary and confidential information in violation of his contractual, statutory, and common-law obligations.

These standards are more than met here. Courts considering circumstances similar to those here repeatedly have held in favor of injunctive relief to protect the misappropriation of confidential and trade secret information prior to adjudication on the merits. See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hegarty, 2 F.3d 405 (11th Cir. 1993), aff'd w/o opinion Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty, 808 F. Supp. 1555 (S.D. Fla. 1992); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211 (7th Cir. 1993); Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 948 F.2d 128 (5th Cir. 1991) (per curiam), aff'd, 777 F. Supp. 1349 (N.D. Tex. 1991); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 72 (10th Cir. 1986); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F. 2d 1098 (5th Cir. 1981). See also Merrill Lynch v. Napolitano, 85 F. Supp. 2d 491, 492-93 (E.D. Pa. 2000).    In view of the consistency with which courts have enforced contractual

obligations similar to those at issue, Defendant cannot gainsay JP Morgan's right to such relief.

Further, it is well settled that the purpose of a preliminary injunction is to preserve the status quo pending trial and a decision on the merits. McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., 114 A.D.2d 165, 172, 498 N.Y.S.2d 146, 151 (2d Dep't), appeal denied, 67 N.Y.2d 606, 501 N.Y.S.2d 1024 (1986); Ruiz v. Meloney, 26 A.D.3d 485, 486, 810 N.Y.S.2d 216, 217 (2d Dep't 2006) (same). See also Ashley MRI Mgmt. Corp. v. Perkes, No. 1915-05, 2006 WL 2050091, (Sup. Ct. Nassau Co. July 10, 2006); Stockley v. Gorelik, 24 A.D.3d 535, 536, 808 N.Y.S.2d 282, 284 (2d Dep't 2005). Similarly, a temporary restraining order is issued when Plaintiff has shown that "immediate and irreparable injury, loss or damage will result unless the Defendant is restrained before the hearing [on the preliminary injunction] can be had." CPLR § 6301.

Indeed, on April 30, 2008, in circumstances similar to those in the present case, the New York State Supreme Court granted injunctive relief in favor of Bear Stearns and against a former Bear Stearns' employee for violating the terms of his employment agreements with Bear Stearns. See Bear Stearns & Co., Inc. v. Steven Nadler, No. 08-610306 (Sup. Ct. N.Y. Co. April, 30, 2008) (Appendix Tab 1); See also Bear Stearns & Co., Inc. v. Gregory P. Speiser, No. 08-105509 (Sup. Ct. N.Y. Co. April, 21, 2008) (Appendix Tab 2); Bear Stearns & Co., Inc. v. Michael J. Belsky, No. 08-105386 (Sup. Ct. N.Y. Co. April, 16, 2008) (Appendix Tab 3); See also Bear Stearns & Co., Inc. v. Shanker Sadhwani, No. 08-104658

(Sup. Ct. N.Y. Co. April, 1, 2008) (Appendix Tab 4); Bear Stearns & Co., Inc. v. Peter C. Budd, Jr., No. 08-104379 (Sup. Ct. N.Y. Co. Mar. 26, 2008) (Appendix Tab 5); Bear Stearns & Co., Inc. v. Edward Moldaver et al., No. 08-104380 (Sup. Ct. N.Y. Co. Mar. 27, 2008) (Appendix Tab 6) Bear Stearns & Co. Inc. v. Marc Cohen and Benjamin Cohen, No. 08-101689 (Sup. Ct. N.Y. Co. Jan. 31, 2008) (Appendix, Tab 7); Bear Stearns & Co. Inc. v. Bradley R. Nettune, No. 07-112838 (Sup. Ct. N.Y. Co. Sept. 24, 2007) (Appendix, Tab 8).

Similarly, other New York courts regularly have granted injunctive relief to financial firms like JP Morgan and enjoined former executives from violating restrictive covenants. See e.g., Prudential v. Lanzatella, No. 98-CV-632OCJS (W.D.N.Y. Sept. 9, 1998) (Appendix, Tab 9); Prudential v. Barone, No. 98-CV-0272E(SC), 1998 WL 269065 (W.D.N.Y. May 19, 1998) (Appendix, Tab 10); Ingenuit, LTD. v. Hariff, 33 A.D. 3d 589, 822 N.Y.S. 2d 301 (2d Dep't 2006); Leake v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 213 A.D.2d 155, 623 N.Y.S.2d 220 (1st Dep't 1995); Pace Securities, Inc. v. Pollak Jr., 157 A.D.2d 557, 550 N.Y.S.2d 299 (1st Dep't 1990); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hickey, No. 97/109082 (Sup. Ct. N.Y. Co. May 20, 1997) (Appendix, Tab 11); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hoban, No. 96/121130 (Sup. Ct. N.Y. Co. Dec. 4, 1996) (Appendix, Tab 12); Dean Witter Reynolds, Inc. v. DeMay, No. 00/0117648 (Sup. Ct. N.Y. Co. Sept. 12, 2000) (Appendix, Tab 13).

**A.**    <u>**JP Morgan  Is Likely To Succeed On The Merits**</u>

JP Morgan is entitled to relief because Defendant has violated the express terms of his agreements with JP Morgan, which constrain Defendant from disseminating, removing and/or using JP Morgan's confidential information and which obligate him to return JP Morgan's proprietary information and materials after his affiliation with JP Morgan is terminated.   These agreements are enforceable under New York law.  <u>See</u> <u>e</u>.<u>g</u>., <u>Garvin GuyButler Corp. v. Cowen & Co.</u>, 155 Misc. 2d 39, 40-41, 588 N.Y.S.2d 56, 57-58 (Sup. Ct. N.Y. Co. 1992); <u>North Atlantic Instruments, Inc. v. Haber</u>, 188 F.3d 38, 47-49 (2d Cir. 1999); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn</u>, 73 F. Supp. 2d 425, 429 (S.D.N.Y. 1999); <u>Ecolab Inc. v. Paolo</u>, 753 F. Supp. 1100, 1112 (E.D.N.Y. 1991); <u>Webcraft Technologies, Inc. v. McCaw</u>, 674 F. Supp. 1039, 1046 (S.D.N.Y. 1987).   Injunctive relief regularly is issued to protect the type of confidential information JP Morgan's agreements with Defendant are designed to protect and to require the return of such confidential information.  <u>See</u> <u>Merrill Lynch v. Rahn</u>, 73 F. Supp. 2d at 429 (noting that injunctive relief like the relief sought here is common in the financial services industry and is "consistently granted").

Because Defendant's agreements with JP Morgan are enforceable and he has violated the provisions by misappropriating and misusing JP Morgan's confidential and proprietary business information and documents, JP Morgan is entitled to an immediate injunction to enforce these agreements.  <u>See</u> <u>Garvin</u>

GuyButler Corp., 155 Misc. 2d at 45, 588 N.Y.S.2d at 61 (granting motion for preliminary injunction enjoining use of confidential proprietary information or trade secrets); North Atlantic Instruments, Inc., 188 F.3d at 49 (affirming grant of preliminary injunction); Merrill Lynch v. Rahn, 73 F. Supp.2d at 426 (determining that preliminary injunction was appropriate); Ecolab Inc., 753 F. Supp. at 1114-15 (granting motion for preliminary injunction preventing disclosure or use of confidential customer information and requiring return of all documents containing such information); Webcraft Technologies, Inc., 674 F. Supp. at 1048 (granting motion for preliminary injunction against disclosure of trade secrets and confidential information).

Under New York Law, a trade secret is defined as any device "which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803, 453 N.Y.S.2d 470, 472 (4th Dep't 1982) (quoting Restatement of Torts § 757 (1939)).

In determining whether a trade secret exists, New York courts have considered the following factors to be relevant:  (a) the extent to which the information is known outside of the owner's business; (b) the extent to which it is known by employees and others involved in the owner's business; (c) the extent of measures taken by the owner to guard its secrecy; (d) the value of the information to him and to competitors; (e) the amount of effort or money expended by the

owner to develop the information; and (f) the ease or difficulty with which the information could be properly acquired or duplicated by others. Id.

In this case, JP Morgan's customer records qualify for trade secret treatment as a compilation of information. JP Morgan's records contained (among other things) the names of actual and potential customers, addresses and unique investment characteristics and financial data pertaining to its individual customers. This information enabled JP Morgan to serve its customers effectively. In addition, the information contained in JP Morgan's records is not readily available to the general public or JP Morgan's competitors from a telephone book, library, professional directory or other publicly available resource. JP Morgan's competitors do not have access to and cannot independently obtain without a substantial expenditure of time, money and effort the totality of information that Defendant has taken. Indeed, without contacting each customer individually, JP Morgan's competitors could not acquire access to the information contained in JP Morgan's records regarding income, net worth, investment objectives, prior investment experience, current money balances and the current securities position of JP Morgan's customers. Based on these facts, it is clear that JP Morgan's customer records derived independent economic value from not being known to the public or its competitors.

Courts often grant injunctive relief to protect confidential customer information. See e.g., Town & Country House & Home Service, Inc. v. Newbery, 3 N.Y.2d 554, 559-60, 170 N.Y.S.2d 328, 332-33 (1958) ("The testimony in the

instant record shows that the customers of plaintiff were not and could not be obtained merely by looking up their names in the telephone or city directory or by going to any advertised locations, but had to be screened from among many other housewives who did not wish services such as Defendants and appellants were equipped to render, but preferred to do their own housework." In light of these facts, the Court of Appeals concluded that "there appears to be no question that plaintiff is entitled to enjoin Defendants from further solicitation of its customers."); Props for Today, Inc. v. Kaplan, 163 A.D.2d 177, 177-78, 558 N.Y.S.2d 38, 39 (1st Dep't 1990) (affirming "preliminary injunction to the extent of enjoining Defendants from soliciting any of plaintiffs customers" because "defendant Kaplan misappropriated confidential information concerning photography stylists and prop masters who particularly favor renting [plaintiff's products]"); Gilman & Ciocia, Inc. v. Reid, 153 A.D.2d 878, 878-79, 545 N.Y.S.2d 387, 388 (2d Dep't 1989) ("The plaintiff . . . demonstrated a prima facie right to permanent injunctive relief based on allegations that the defendant had misappropriated customer lists compiled by the plaintiff, and that she had used those lists for her own benefit in violation of her contractual and fiduciary obligations to the plaintiff").[3]

---

[3]    Consistent with New York law, courts throughout the country consistently have held securities firms' customer lists to be trade secrets protectable by the injunctive relief JP Morgan  seeks herein. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Davis, 1998 WL 920328, at *1 (N.D. Tex. Dec. 30, 1998) ("This court has routinely held that Merrill Lynch's customer lists qualify as trade secrets") (Appendix, Tab 7) ; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cross, 1998 WL 122780, at *2 (N.D. Ill. Mar. 13, 1998) ("Customer lists are entitled to trade secret protection under Illinois law.") (Appendix, Tab 10); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman, 1996 WL 707107, at *2 (D. Kan. Oct. 1, 1996); Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1994 WL 900431 at

Furthermore, as detailed in the accompanying Palacio Affidavit, JP Morgan employs reasonable efforts to maintain the confidentiality of its records. Specifically, JP Morgan confines access to the records to those employees whose jobs require them to refer to this information; it prohibits duplication of the records; it provides constant reminders about the confidential nature of the information contained within these records. Moreover, JP Morgan's employees, including Defendant, are required to sign a confidentiality agreement with JP Morgan whereby the employees agree not to utilize or to exploit JP Morgan's customer records other than in the normal course of JP Morgan ' business.

Notably, the New York Supreme Court, recently, in <u>Bear Stearns &amp; Co. Inc. v. Peter C. Budd, Jr.</u>, No. 08-104379 (Sup. Ct. N.Y. Co. Mar. 26, 2008) (Figueroa, J.) (Appendix, Tab 5), <u>Bear Stearns &amp; Co. Inc. v. Marc Cohen and Benjamin Cohen</u>, No. 08-101689 (Sup. Ct. N.Y. Co. Jan. 31, 2008) (Feinman, J.) (Appendix, Tab 7), and <u>Bear Stearns &amp; Co. Inc. v. Bradley R. Nettune</u>, No. 07-112838 (Sup. Ct. N.Y. Co. Sept. 24, 2007) (Schoenfeld, J.) (Appendix, Tab 8), recognized Bear Stearns's interest in protecting its customer information and granted Bear Stearns a temporary restraining order against a former Bear Stearns employee for violating the terms of his employment agreement with Bear Stearns. The New York Supreme Court enjoined Bear Stearns' former employees from violating any terms of their employment agreements, from using, disclosing or

---

*6 (E.D. Mich. Jan. 11, 1994); <u>Merrill Lynch, Pierce, Fenner &amp; Smith, Inc. v. Kramer</u>, 816 F. Supp. 1242, 1246 (N.D. Ohio 1992); <u>Merrill Lynch, Pierce, Fenner &amp; Smith, Inc. v. Hagerty</u>, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992), <u>aff'd</u>, 2 F.3d 405 (11th Cir. 1993).

transmitting for any purpose Bear Stearns' books, records, documents, and other information pertaining to its clients (to the extent covered by their employment agreements), and ordered the former employees to return all of Bear Stearns' documents and confidential information in their possession. The same logic applies in the instant action as well.

Defendant has misappropriated JP Morgan's confidential information and trade secrets. Defendant knew that JP Morgan's customer information was confidential when he was hired. Upon termination of Defendant's employment with JP Morgan, Defendant could not take nor could he then utilize particularized information that JP Morgan disclosed to him during the course of his employment, which is unknown to others in the industry, and which provides JP Morgan with an economic advantage over its competitors. Defendant's misappropriation of JP Morgan's customer information constitutes a prohibited misuse of JP Morgan's trade secrets because Defendant knew at the time of disclosure that the information was acquired under circumstances that gave rise to a duty to maintain its secrecy and to limit its use.

Defendant's unlawful use of JP Morgan's records also constitutes unfair competition. Advanced Magnification Instruments of Oneonta, N.Y. Ltd. v. Minuteman Optical Corp., 135 A.D.2d 889, 891, 522 N.Y.S.2d 287, 289 (3d Dep't 1987) ("an employee's illegal physical taking or copying of an employer's files or confidential information constitutes unfair competition); Dampf, P.C. v. Bloom, 127 A.D.2d 719, 720, 512 N.Y.D.2d 116, 117 (2d Dep't 1987) (holding

that the defendant had engaged in unfair competition by his misappropriation and exploitation of confidential information). Similarly, Defendant acknowledged and agreed that JP Morgan's records and the information contained therein were the sole and exclusive property of JP Morgan. By removing customer records from JP Morgan, Defendant has also committed the intentional tort of conversion. Employers' Fire Ins. Co. v. Cotton, 245 N.Y. 102, 105, 156 N.E.2d 629, 630 (1927) (conversion is the unauthorized assumption and exercise of the right to ownership over goods belonging to another to the exclusion of the owner's rights).

Finally, during the time Defendant was a JP Morgan employee, Defendant owed JP Morgan a fiduciary duty of loyalty that required him to act only in JP Morgan's best interests. Western Electric Co. v. Brenner, 41 N.Y.2d 295, 360 N.E.2d 1091, 1094 (1977). During the term of employment, an employer has the right to expect the undivided loyalty of its employees. Id. The duty of loyalty is breached when employees take action inimical to their employer's best interests. Here, Defendant breached his duty of loyalty to JP Morgan when he misappropriated JP Morgan's trade secrets and downloaded confidential JP Morgan customer information, while still in its employ. Defendant's unlawful conduct, animated by personal profit and the intent to subvert JP Morgan's business, directly violates JP Morgan's entitlement to his undivided loyalty. As such, JP Morgan has made a sufficient showing to establish a likelihood and indeed probability of its ultimate success.

**B.    No Adequate Remedy At Law Exists**

JP Morgan will suffer irreparable harm in the absence of injunctive relief.   Equity may not refuse to exercise jurisdiction unless there exists an adequate remedy at law.   None exists here.   In <u>Pace Securities, Inc. v. Pollack</u>, <u>supra</u>, the First Department found irreparable harm under similar circumstances:

> This action concerns the alleged improper acquisition and use by defendants of Pace Securities' confidential customer information. Plaintiffs seek a preliminary injunction restraining defendants from using this information pending a determination of their legal action. <u>Plaintiffs have clearly demonstrated . . . that they will be irreparably injured absent the issuance of a preliminary injunction.</u>

157 A.D.2d at 558, 550 N.Y.S.2d at 300 (emphasis added).   Irreparable harm lies, in part, in the fact that JP Morgan's clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, JP Morgan and JP Morgan's registered representatives.   As one court observed, "[i]rreparable and immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that their financial information, market transactions, and investment assets which they presumed were held in confidence have been disclosed, will lose trust and confidence in Merrill Lynch."   <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer</u>, 816 F. Supp. 1242, 1247 (N.D. Ohio 1992).

In addition, as the Second Circuit has held, "'loss of trade secrets cannot be measured in money damages' because '[a] trade secret once lost is, of course, lost forever.'"   <u>North Atlantic Instruments, Inc. v. Haber</u>, 188 F.3d 38, 49

(2d Cir. 1999) (finding irreparable harm based in part on the fact that the employee had "acknowledged in their Employment Agreement that a breach of the confidentiality clause would cause 'irreparable injury' to [their former employer). As a result of Defendant's misconduct, JP Morgan has suffered and will continue to suffer irreparable harm, and, thus, is entitled to preliminary injunctive relief. See Webcraft Technologies, Inc. v. McCaw, 674 F. Supp. 1039, 1046, 1048 (S.D.N.Y. 1987).

### C.  The Benefit Of Granting Injunctive Relief Outweighs Denial And Is In The Public Interest

The benefit of injunctive relief to JP Morgan far outweighs any detriment to Defendant.  On the one hand, an injunction would safeguard JP Morgan's goodwill, business reputation, trade secrets, methods of business operation, and contractual rights.  Above all, however, an injunction would protect JP Morgan from its competitor's ongoing piracy of its highly sought after skilled employees who have confidential trade secret information.  By contrast, Defendant has deliberately breached his contractual commitments to JP Morgan by misappropriating JP Morgan trade secrets and by using them to induce JP Morgan's customers to leave JP Morgan.  Equity does not favor a party who "is seeking not only to violate their contractual obligations, but also their fiduciary duty to their former employer."  Kaufman v. Int'l Bus. Mach. Corp., 97 A.D.2d 925, 926, 470 N.Y.S.2d 720, 722 (3d Dep't 1983), aff'd, 61 N.Y.2d 930, 474 N.Y.S.2d 721 (1984).

Other courts have widely recognized the public's interest in the enforcement of reasonable restrictive covenants and in "'the maintenance of standards of commercial ethics,'" Uniform Law Comment, Uniform Trade Secrets Act (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974)). Accordingly, the preliminary injunction JP Morgan seeks would serve the public interest. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman, 1996 WL 707107, *3 (D. Kan. Oct. 1, 1996) ("[T]here is a strong public interest in favor of protecting trade secrets") (Appendix, Tab 13); Kramer, 816 F. Supp. at 1248 ("To deny injunctive relief in this case would . . . jeopardize the integrity of the securities industry and to the detriment of the public interest [and] . . . would cast doubt on the integrity of contractual agreements"). As a court in Illinois observed, in a case involving another securities firm's agreements with its registered representatives, "[t]he public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records." IDS Life Insurance Co. v. SunAmerica, Inc., 958 F. Supp. 1258, 1282 (N.D. Ill. 1997), aff'd in part, vac. in part on other grounds, 136 F.3d 537 (7th Cir. 1998). Consequently, the court explained, "the public's interest has been disserved by defendants' actions" because "[t]he public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior." Id. (emphasis added).

Moreover, Defendant will not be precluded from engaging in his chosen profession. The injunction sought merely precludes Defendant from doing

so in violation of the terms of his contracts with JP Morgan. Thus, Defendant would be able to provide services to any company, as long as he does not use JP Morgan's confidential information. The injunction will only require Defendant to return what he has taken.

D.    **Preservation of the Status Quo**

A return to the <u>status quo</u> requires that the Court enjoins Defendant to return, and to refrain from disclosing, any and all confidential information he improperly removed from JP Morgan.

Equity mandates that Defendant should be prohibited from profiting from his wrongful conduct. "[A] basic precept of our moral order and a cardinal principal of American law is that our courts will not allow a wrongdoer to profit from their own illegal conduct." <u>Dep't of Housing Pres. & Dev. v. St. Thomas Equities Corp.</u>, 128 Misc. 2d 645, 651, 494 N.Y.S.2d 787, 792 (Sup. Ct. App. Term 1985). <u>See</u> <u>also</u> <u>Prudential Ins. Co. v. Goldstein</u>, 43 F. Supp. 765 (E.D.N.Y. 1942). The court in <u>Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, applied this equitable principle and enjoined acceptance of wrongfully solicited business, finding that to allow former employees to breach their legal obligations preemptive, before their employers can seek relief in court, and then to allow these employees to profit by their own opportunistic wrongdoing, would promote deliberate breaches of contract and misappropriation of trade secrets:

> [T]o permit Plaintiff to accept business from these clients would allow Plaintiff to reap the benefit of their blatant disregard of their contractual obligations, and reward Plaintiff for providing information to PaineWebber while he was still employed at Merrill Lynch. The

21

practical effect of such an order cannot be overlooked. As the parties have indicated to this Court, and as is evidenced by the myriad of decisions in this area of the law, this precise factual and legal issue is oft repeated. <u>Allowing Plaintiff to accept business from these clients on the basis of the language in the Agreement, would encourage, and sanction, future parties in Plaintiff's position to breach their contractual duties as much as possible</u>, because the more clients which can be solicited before an injunction is entered, the more clients Plaintiff will be able to have transferred.

1994 WL 900431 (E.D. Mich. 1994) (emphasis added) (Appendix, Tab 14).

In this case, JP Morgan only seeks to require Defendant to honor his contractual obligations, by refraining from misappropriating JP Morgan's confidential information or trade secrets. "The prohibition of [defendant] to utilize confidential and proprietary information of [plaintiff] pending the disposition of this case will not prejudice [defendant] but rather shall maintain the status quo." <u>Garvin GuyButler Corp. v. Cowen & Co.</u>, 155 Misc. 2d 39, 45, 588 N.Y.S.2d 56, 60 (Sup. Ct. N.Y. Co. 1992). Therefore, the balancing of the equities lies in JP Morgan's favor, and, thus, an injunction should be granted. <u>See</u> <u>id</u>.

### Conclusion

For the reasons stated above, JP Morgan respectfully requests that its motion for a temporary restraining order and a preliminary injunction be granted, pending a final award in the FINRA arbitration between JP Morgan and Defendant.

Dated:   New York, New York
         June 16, 2008

<div style="margin-left: 40%;">

PADUANO & WEINTRAUB LLP

By: _____
         Anthony Paduano (AP 8400)
         Jordan D. Becker (JB 3636)
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

Attorneys for Plaintiff
J.P. Morgan Securities Inc.

</div>

24